UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JEAN ERICK DORMEZIL,

                    Petitioner,

v.                                   Case No. 3:04-cv-1026-12HTS

JAMES R. MCDONOUGH,[1]
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

        Petitioner Jean E. Dormezil, an inmate of the Florida penal
system proceeding *pro se* and *in forma pauperis*, initiated this
action by filing a Petition for Writ of Habeas Corpus (Doc. #1)
(hereinafter Petition) pursuant to 28 U.S.C. § 2254 on June 18,
2004.  Petitioner challenges a 1998 state court (Brevard County,
Florida) judgment of conviction for trafficking in cocaine on the
following grounds: (1) Petitioner was denied due process when the
trial court denied his motion to suppress because his consent to
the search was involuntary; (2) Petitioner was denied due process
and a fair trial when the trial court did not declare a mistrial
based on improper prosecutorial comments on his post-arrest
silence; (3) trial counsel was ineffective for failure to advise

_____

        [1] James R. McDonough, the Interim Secretary of the Florida
Department of Corrections, is substituted as the proper party
Respondent.

Petitioner that he would face a fifteen-year mandatory minimum sentence if convicted at the trial; (4) counsel was ineffective for failure to obtain an interpreter for Petitioner at the suppression hearing; and, (5) counsel was ineffective for failure to request a curative instruction or move for a mistrial regarding prosecutorial comments which addressed his post-arrest silence and which shifted the burden of proof.

Respondents filed an Amended Response to Petition (Doc. #26) (hereinafter Response). In support of their Response, they submitted exhibits.[2] Petitioner was granted an opportunity to file a Reply. See Court's Orders (Docs. #21, 25). Petitioner has notified the Court that he intends to rely upon his initial Reply. See Petitioner's Amended Notice to the Court (Doc. #27); Petitioner's Reply Response to Petition (Doc. #23). This case is now ripe for review.

## II. Procedural History

On May 28, 1997, Petitioner Dormezil was charged by Information with trafficking in 450 grams or more, but less than 150 kilograms of cocaine in Brevard County, Florida. Ex. A at 97. After a trial by jury, Petitioner was sentenced to a fifteen-year mandatory minimum term of imprisonment. Id. at 185-90; see

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

2

http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections).

On direct appeal, Petitioner raised the following claims: (1) whether the trial court erred in denying his motion to suppress any and all substances alleged to be cocaine which were seized from a vehicle that Petitioner was driving, and (2) whether the trial court erred in not ordering a mistrial where the State impermissibly commented on Petitioner's right to remain silent. Ex. C.  The State filed an Answer Brief.  Ex. D.  On March 31, 2000, the appellate court affirmed with a written opinion. Dormezil v. State, 754 So.2d 168 (Fla. 5th DCA 2000); Ex. E.  The mandate issued on April 19, 2000.  Ex. F.

On July 5, 2000, Petitioner filed a Petition for Writ of Mandamus in the Supreme Court of Florida, seeking to file a belated notice to invoke the discretionary jurisdiction in the Fifth District Court of Appeal.  Ex. G.  The court treated the petition as a petition for writ of habeas corpus.  Ex. H.  On June 19, 2001, the court granted the petition and permitted Petitioner thirty days to file a notice to invoke discretionary jurisdiction in the appellate court.  Dormezil v. State, 791 So.2d 1096 (Fla. 2001) (table decision); Ex. M.

On July 17, 2001, Petitioner filed a notice to invoke discretionary jurisdiction in the Fifth District Court of Appeal. Ex. N.   On December 21, 2001, following the filing of

3

jurisdictional briefs, the Supreme Court of Florida declined to accept jurisdiction and denied the petition for review.  <u>Dormezil v. State</u>, 805 So.2d 805 (Fla. 2001) (table decision); Ex. Q.

On February 5, 2002, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he raised the following grounds: (1) trial counsel was ineffective for failure to file a motion to suppress, alleging that Petitioner's car was searched due to racial profiling; (2) trial counsel was ineffective for failure to provide Petitioner with an interpreter at the suppression hearing; (3) the trial court committed fundamental error and deprived Petitioner of due process in not providing an interpreter at the suppression hearing; (4) the trial court abused its discretion and deprived Petitioner of due process when, over objection, it allowed the State to "switch its key witness on the day of trial"; (5) the trial court erred in not declaring a mistrial when the State impermissibly commented on Petitioner's right to remain silent; (6) trial counsel was ineffective for failure to explain the State's plea agreement and advise him that he faced a fifteen-year mandatory sentence if convicted at the trial; (7) trial counsel was ineffective for failure to request a curative instruction and for not moving for a mistrial when the prosecutor made improper comments on Petitioner's post-arrest silence; and (8) trial counsel was ineffective for telling Petitioner that two African-American potential jurors could

4

not participate in his trial.  Ex. R at 95-103.  On September 5, 2002, Petitioner, through counsel, filed an amended motion for post conviction relief, adding ground nine: trial counsel was ineffective for failure to object and request a mistrial regarding the State's improperly shifting the burden of proof and making golden rule arguments during the closing argument.  <u>Id</u>. at 152-54. An evidentiary hearing was conducted on November 21, 2002.  <u>Id</u>. at 11-66, Transcript of the Evidentiary Hearing (hereinafter EH Tr.). On December 4, 2002, the trial court denied the motions.  <u>Id</u>. at 165-72.

On appeal, Petitioner argued: (1) the lower court erred in denying his claim that trial counsel was ineffective for failing to competently advise him when counseling him on the State's plea offer that, if convicted, he would necessarily serve a fifteen-year mandatory minimum prison sentence; (2) the lower court erred in denying his claim that trial counsel was ineffective for failing to properly object to, and preserve for review, prejudicial and improper comments by the prosecutor during closing arguments; and, (3) the lower court erred in denying his claim that trial counsel was ineffective for failing to obtain an interpreter for Petitioner during a critical stage of his trial proceedings.  Ex. V.  The State filed an Answer Brief, and Petitioner filed a Reply Brief. Ex. W; Ex. X.  On March 2, 2004, the appellate court per curiam affirmed without a written opinion, and the mandate issued on March

19, 2004.  <u>Dormezil v. State</u>, 869 So.2d 569 (Fla. 5th DCA 2004);

Ex. Y; Ex. Z.

Petitioner's Petition (handed to the correctional institution

for mailing to this Court on June 15, 2004, and filed in this Court

on June 18, 2004) is timely filed within the one-year period of

limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 6-7.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the

reasons set forth more fully below, concludes Petitioner is not

entitled to an evidentiary hearing.  A habeas corpus petitioner is

entitled to an evidentiary hearing in federal court if he alleges

facts which, if proven, would entitle him to habeas corpus relief.

<u>Smith v. Singletary</u>, 170 F.3d 1051, 1053-54 (11th Cir. 1999)

(citation omitted); <u>Cave v. Singletary</u>, 971 F.2d 1513, 1516 (11th

Cir. 1992) (citing <u>Townsend v. Sain</u>, 372 U.S. 293 (1963)).  Here,

the pertinent facts of the case are fully developed in the record

before the Court.  <u>Smith</u>, 170 F.3d at 1054 (stating that a district

court does not need to conduct an evidentiary hearing "if it can be

conclusively determined from the record that the petitioner was not

denied effective assistance of counsel").  No evidentiary

proceedings are required in this Court.  <u>High v. Head</u>, 209 F.3d

1257, 1263 (11th Cir. 2000) (citing <u>McCleskey v. Zant</u>, 499 U.S.

467, 494 (1991)), <u>cert</u>. <u>denied</u>, 532 U.S. 909 (2001).  The Court can

"adequately assess [Petitioner's] claim[s] without further factual

development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004).   Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).   Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners.   Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996.   AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas

corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases.  <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact.  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

<u>Henderson v. Campbell</u>, 353 F.3d 880, 889-891 (11th Cir. 2003)

(footnote omitted), <u>cert</u>. <u>denied</u>, 543 U.S. 811 (2004).

8

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications: "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit

within the "contrary to" clause even if the
federal court might have reached a different
result relying on the same law.  See <u>Williams</u>,
529 U.S. at 404-06, 120 S.Ct. at 1519-20
(O'Connor, J., concurring).

. . . .

"Under the 'unreasonable application' clause,
a federal habeas court may grant the writ if
the state court identifies the correct
governing legal principle from this Court's
decisions but unreasonably applies that
principle to the facts of the prisoner's
case." <u>Williams</u>, 529 U.S. at 414, 120 S.Ct.
at 1523 (O'Connor, J., concurring).  In
deciding this issue, the federal court should
consider whether the state court's application
of the law was objectively unreasonable and
should not apply the subjective "all
reasonable jurists" standard.  <u>Id</u>. at 409-10,
120 S.Ct. at 1521-22.  The Supreme Court
recently adhered to its pronouncements in
<u>Williams</u>, stating that "we stressed in
<u>Williams</u> that an unreasonable application is
different from an incorrect one."  <u>Bell v.
Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
L.Ed.2d 914 (2002).  The Court further noted
that "a federal habeas court may not issue a
writ under the unreasonable application clause
'simply because that court concludes in its
independent judgment that the relevant state-
court decision applied clearly established
federal law erroneously or incorrectly.'" <u>Id</u>.
(quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

In applying the "contrary to" prong of
AEDPA, we have recognized that where no
Supreme Court precedent is on point, "we
cannot say that the state court's conclusion
. . . is contrary to clearly established

> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>.
<u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. <u>See</u> <u>id</u>. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted). If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few

12

and far between." Waters v. Thomas, 46 F.3d
1506, 1511 (11th Cir. 1995) (en banc) (quoting
Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.
1994)).

For assessing a lawyer's performance,
Chandler v. United States, 218 F.3d 1305 (11th
Cir. 2000) (en banc) cert. denied, 531 U.S.
1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001),
sets out the basic law: "Courts must indulge
the strong presumption that counsel's
performance was reasonable and that counsel
made all significant decisions in the exercise
of reasonable professional judgment." Id. at
1314 (internal marks omitted). . . . Our role
in reviewing an ineffective assistance claim
is not to "grade" a lawyer's performance;
instead, we determine only whether a lawyer's
performance was within "the wide range of
professionally competent assistance." See
Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has
provided effective assistance is an objective
one:  a petitioner must establish that no
objectively competent lawyer would have taken
the action that his lawyer did take." See
Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high.  "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding.  Virtually every
act or omission of counsel would meet that
test." Strickland, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance. See id.
at 2068.[3]

_____

    [3] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable

<u>Van Poyck</u>, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting <u>Strickland</u>, 466 U.S. at 687).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that he was denied due process when the trial court denied his motion to suppress because his consent to the search was involuntary.  Petitioner raised this claim on direct appeal (Ex. C), and the appellate court affirmed with a written opinion, stating in pertinent part:

> He contends the trial court erred in denying his motion to suppress the cocaine.  Dormezil argues that his consent allowing the Florida Highway Patrol to search his rental car was not knowing and voluntary in that his command of the English language was faulty and in that the officer repeatedly asked for Dormezil's consent. . . .
>
> In <u>Davis v. State</u>, 594 So.2d 264, 266 (Fla. 1992), the Supreme Court stated:

---

outcome on appeal had the claim been preserved." <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

Whether a suspect voluntarily consents to a search is a question of fact to be determined by the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.E[d].2d 818 (1981). In addition, the determination of whether the consent to a search was voluntary is a question for the trial judge and should not be disturbed on appeal unless the determination is clearly erroneous.

Where the state asserts it had the right to search the defendant despite the absence of a warrant because the defendant consented to the search, the state has the burden to prove that consent was freely and voluntarily given. See Norman v. State, 379 So.2d 643, 646 (Fla. 1980); Bailey v. State, 319 So.2d 22 (Fla. 1975); Younger v. State, 433 So.2d 636 (Fla. 5th DCA 1983); Restrepo v. State, 438 So.2d 76 (Fla. 3d DCA 1983). The burden of proof in these cases depends on whether there is invalid police conduct prior to obtaining the consent. See Denehy v. State, 400 So.2d 1216, 1217 (Fla. 1980). "Under ordinary circumstances the voluntariness of the consent to search must be established by preponderance of the evidence." Id. With invalid police conduct like prolonged detention, threats to obtain a warrant, or repeated requests for consent, the burden of proof is elevated to the clear and convincing standard. Id.; see also Gonterman v. State, 358 So.2d 595, 596 (Fla. 1st DCA 1978) (listing "repeated requests for the consent" as an example of inappropriate conduct by authority seeking consent to search).

The trial court applied the clear and convincing standard in denying the motion to suppress, apparently due to the repeated questioning of Dormezil by the highway

patrolman prior to obtaining Dormezil's
consent, which was captured on the patrolman's
video.  The video tape of the encounter in the
instant case reveals that Dormezil conversed
with the patrolman readily with only minor
difficulties throughout the traffic stop.
During the hearing on the motion to suppress,
Dormezil did not require an interpreter, and
he testified that he had lived in the United
States for six years and had begun learning
the English language almost a decade before
this police stop occurred.  Based on the
totality of circumstances, the trial court did
not clearly err in determining that Dormezil
voluntarily consented to the search of his
rental car, which led to the discovery of the
cocaine.  See Castro v. State, 755 So.2d 657
(Fla. 4th DCA 1999) (holding that it was
within trial court's discretion to reject
appellant's contention that he did not speak
English in light of officer's testimony that
appellant conversed with officer in English at
scene of arrest prior to the arrest); cf.
Balthazar.

Dormezil, 754 So.2d at 169-70 (footnote omitted).

Respondents contend that this ground is barred by Stone v.
Powell, 428 U.S. 465 (1976), and this Court agrees.  See Response
at 10-11.  Under the principles of Stone v. Powell, federal habeas
review of Petitioner's illegal search and seizure claim is not
cognizable in this proceeding because Petitioner had a full and
fair opportunity to litigate his Fourth Amendment issue in state
court.

[W]hen "the State has provided an opportunity
for full and fair litigation of a Fourth
Amendment claim, a state prisoner may not be
granted federal habeas corpus relief on the
ground that evidence obtained in an
unconstitutional search and seizure was
introduced at his trial."  Stone v. Powell,

16

> 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49
> L.Ed.2d 1067 (1976) (footnotes omitted).
> Thus, before [this Court] may review the
> merits of [Petitioner's] Fourth Amendment
> claim, [he] must demonstrate that the state
> courts deprived him of a full and fair
> opportunity to litigate the claim.
>
> In Tukes v. Dugger, 911 F.2d 508, 513-14
> (11th Cir. 1990), [the Eleventh Circuit Court
> of Appeals] said this in applying *Stone*: "For
> a claim to be fully and fairly considered by
> the state courts, where there are facts in
> dispute, full and fair consideration requires
> consideration by the fact-finding court, and
> at least the availability of meaningful
> appellate review by a higher state court."

Peoples v. Campbell, 377 F.3d 1208, 1224 (11th Cir. 2004), cert.

denied, 125 S.Ct. 2963 (2005). The Eleventh Circuit has "construed

Stone v. Powell to bar consideration of a Fourth Amendment claim if

the state has provided an opportunity for full and fair litigation

of the claim 'whether or not the defendant employs those

processes.'" Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996)

(citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978))

(footnote omitted).

This claim was raised in a pretrial motion to suppress, and

the court heard testimony from the State and the defense. The

trial judge allowed both parties to argue the issue before making

his ruling. This Court has reviewed the record of the suppression

hearing and finds Petitioner had a full and fair opportunity to

argue his Fourth Amendment claim in state court. In addition, this

claim was raised on direct appeal, and the trial court's decision

with regard to this issue was affirmed.  Petitioner was afforded
every full and fair opportunity to litigate and have adjudicated
the search and seizure issue; therefore, under Stone v. Powell, he
should not be permitted to further litigate the claim in this
Court.  This ground is barred.

## B. Ground Two

Petitioner Dormezil claims that he was denied due process and
a fair trial when the trial court did not declare a mistrial based
on improper prosecutorial comments on his post-arrest silence.
Petitioner raised this claim on direct appeal (Ex. C), and the
appellate court affirmed with a written opinion, stating in
pertinent part:

> [Petitioner] Dormezil raises two issues
> in his appeal. . . . Second, he argues that
> the trial judge should have granted a mistrial
> due to a comment during the state's closing
> argument on his right to remain silent.
>
> . . . .
>
> The defense counsel's objection to the
> single, isolated comment by the prosecutor
> [footnote:  The comment which garnered defense
> counsel's objection:  "Well, taking that same
> vehemence and force that he used to inform the
> officer that he wasn't speeding, why would not
> a person whose [sic] just been placed under
> arrest, placed in handcuffs, *why doesn't that
> person ask, 'What are you handcuffing me for?
> What are you doing?'"* (emphasis supplied.)]
> was not preserved because defense counsel
> declined the trial court's offer to make a
> curative instruction.  See State v. Fritz, 652
> So.2d 1243 (Fla. 5th DCA 1995) (objection to
> improper prosecutorial closing argument, where
> prosecutor improperly vouched for credibility

> of police officers' testimony, waived where no request for curative instruction or mistrial made); <u>see</u> <u>also</u> <u>State v. Benton</u>, 662 So.2d 1364, 1365 (Fla. 3d DCA 1995) ("As to the state's impermissible comment on defendant's right to remain silent, defendant's failure to request a curative instruction or a mistrial after the court apparently sustained defendant's objection precludes awarding a new trial based on that comment"); <u>Jean v. State</u>, 638 So.2d 995, 997 (Fla. 4th DCA 1994) ("appellant's complaint of an improper comment on his right to remain silent was waived when appellant refused the court's offer of a curative instruction"). **The error was not fundamental**. <u>See</u> <u>Walker v. State</u>, 701 So.2d 1258, 1261 (Fla. 5th DCA 1997) (en banc) (citing <u>State v. Marshall</u>, 476 So.2d 150 (Fla. 1985)) (the harmless error rule applies in cases involving comments on the right to remain silent).

<u>Dormezil</u>, 754 So.2d at 170 (emphasis added).

Thus, the appellate court, in the alternative, adjudicated the claim on the merits. Therefore, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness <u>per</u> <u>se</u>, of the state court decision that we are to decide." <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim

was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

During the closing argument, the prosecutor stated:

> If you remember correctly, in the videotape, when that car -- when the vehicle was stopped, do you remember how the Defendant began to act with the officer?  The Trooper informed him, first off, "I stopped you because you were speeding.  You were observed speeding."  Just a simple traffic stop.  And what did the Defendant say, "Oh, no.  No. I wasn't speeding."  He was adamant that he was not speeding.
>
> **Well, taking that same vehemence and force that he used to inform the officer that he wasn't speeding, why would not a person whose [sic] just been placed under arrest, placed in handcuffs, why doesn't that person ask, "What are you handcuffing me for?  What are you doing."**

Tr. at 241 (emphasis added).  Defense counsel (Ms. Taylor) objected and requested to approach the bench.  <u>Id</u>. at 241-42.  During the sidebar conference, defense counsel argued that this was an impermissible comment on Mr. Dormezil's right to remain silent. <u>Id</u>. at 242.  After some discussion, the trial judge stated:  "The law is pretty close on this.  I think you commented on the Defendant's right to remain silent at a time when he had a right to remain silent."  <u>Id</u>. at 244.  Assuming that defense counsel would

want a curative instruction, the trial judge asked: "Won't that emphasize it if I tell the jury?" Id. Defense counsel responded that she was not requesting "any kind of instruction" and simply requested that the prosecutor not comment on Mr. Dormezil's right to remain silent again. Id. at 244-45. The trial judge concluded the sidebar conference with a directive not to comment on Mr. Dormezil's right to remain silent, to which the prosecutor agreed. Id. at 245. Thus, the record clearly reflects that defense counsel did not request a mistrial or a curative instruction.

However, even assuming *arguendo* that the prosecutor's comments were improper, the comments, when considered in the context of the entire proceeding, did not in any way render the proceeding fundamentally unfair. There is no reasonable probability that the comments changed the outcome of the case. Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997), cert. denied, 523 U.S. 1080 (1998); Sexton v. Howard, 55 F.3d 1557, 1559 (11th Cir. 1995) (setting forth the two-prong test for prosecutorial misconduct: that the conduct must be improper and the conduct must prejudicially affect the substantial rights of the defendant in that there is a reasonable probability that, but for the conduct, the outcome of the trial would have been different), cert. denied, 516 U.S. 1124 (1996).

The jury heard testimony from the arresting officers and Mr. Dormezil and also viewed the actions of the parties at the search

21

on videotape.   The videotape of the arrest was entered into
evidence and showed Petitioner watching the police search of his
vehicle and then attempting to run when the cocaine was found.  Tr.
at 26, 41-42, 51-52.   Petitioner testified at the trial and
explained that he briefly loaned the rental car to an acquaintance
by the name of "Frank" and that Frank must have put the cocaine in
the car; defense counsel reminded the jury of Frank's presence.
Id. at 146-51, 155-56, 235, 263.  Further, at the trial, Petitioner
testified that he did ask the officer why he was being handcuffed.
Id. at 174.  It is noteworthy that the trial judge instructed the
jury that the attorneys were not witnesses in the case and
therefore their statements and arguments were not evidence.  Id. at
12, 215; see Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001)
(citations omitted) (stating that "jurors are presumed to follow
the court's instructions."), cert. denied, 534 U.S. 1085 (2002).
Further, defense counsel reminded the jury that what the attorneys
say is not evidence.   Tr. at 216.   Thus, as noted by the
Respondents, the trial court's failure to declare a mistrial based
on the prosecutor's comments did not deny Petitioner a fair trial.
See Response at 11-13.

### C. Ground Three

Petitioner claims that trial counsel was ineffective for
failure to advise Petitioner that he would face a fifteen-year
mandatory minimum if convicted at the trial.   Specifically, he

states that he would have accepted the State's six-year plea offer
if he had known that he faced a fifteen-year mandatory minimum
sentence if convicted at the trial. Petitioner raised this ground
in his Rule 3.850 motion (as ground six), and the trial court,
after conducting an evidentiary hearing[4], adjudicated the claim on
the merits. In denying the claim, the trial court stated in
pertinent part:

> As to Claim Six, it is asserted that
> counsel was not effective in failing to urge
> the defendant to accept the plea offer of six
> years. Counsel testified that she conveyed
> the six year plea offer to the defendant, but
> he said he was innocent and did not know the
> cocaine was there in the car. The defendant
> at the evidentiary hearing testified he did
> not accept the six year offer but was unaware
> of the 15 year mandatory penalty at the time
> of not accepting the plea offer. The defendant
> further testified he knew before trial of the
> possibility of 15 years. The defendant was
> charged with the first degree felony of
> trafficking in cocaine over 400 grams carrying
> a minimum penalty of 15 calendar years. There
> was no evidence of any counteroffer or
> attempted acceptance of the 6 years by the
> defendant before going to trial. The theory
> of the ineffective counsel is that the counsel
> should have persuaded defendant to accept six
> years in prison prior to trial and a failure
> to do [so] constitutes ineffective assistance
> of counsel.
>
> To prevail on this claim the defendant
> must prove counsel failed to communicate a
> plea offer or misinformed him concerning the
> penalty he faced in a trial. Young v. State,

---

[4] Petitioner Dormezil was represented by counsel at the
evidentiary hearing, and both Petitioner and his former trial
counsel (Susan Taylor) testified at the hearing. See EH Tr.

608 So. 2d 111 (Fla. 5th DCA 1992). There is no assertion that defense counsel failed to communicate the plea offer of six years. The defendant testified in the evidentiary hearing that counsel conveyed the six year offer. The defendant [sic] did not misinform the defendant of the penalty if the offer were rejected and he was convicted. The defendant testified that counsel failed to inform him of the 15 year mandatory penalty. Suzanne Taylor testified she did not know if she mentioned the mandatory. However, there is no prejudice, even if one considers the failure to inform, as misinforming, because the defendant was aware of the 15 years possibility before trial and did not offer to plead guilty in return for a 6 year sentence. Or did the defendant wish to exercise his right to a jury trial? The defendant did testify he knew the possibility of 15 years but did not know of the mandatory sentence. The 15 years is the mandatory sentence for this felony first degree punishable by thirty years. That the defendant knew he was facing 15 years allows the court to conclude that he did know of the mandatory portion of the sentence contrary to his assertion. In weighing his credibility on this issue I am guided by his assertion that he understand [sic] English as a a [sic] two year old at the time of the incident and the suppression hearing. Based on the evidence, the Court finds that is clearly untrue. His testimony that he knew he was facing 15 years but not that it was a mandatory penalty is unworthy of belief.

Ex. R at 166-68.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, this ground should be addressed applying

the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

The evidentiary hearing transcript reflects that counsel pursued Petitioner's best interests.  Ms. Susan Taylor (Petitioner's former trial counsel)[5] testified that her general

---

[5] Ms. Susan Taylor had worked on at least 100 felony drug cases before taking Petitioner's case.  EH Tr. at 18; see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

practice, in conveying plea offers and making recommendations as to whether or not a client should accept a plea, "was to let the client decide."   EH Tr. at 10.   Specifically, with respect to Petitioner Dormezil, she recalled Petitioner's proclamation of innocence:

> I do remember that every time we talked about [sic] his answer was always the same.
>
> He always contended that he was innocent and he didn't know how the cocaine got there, and that he couldn't give up anybody because there was nobody.  He didn't know how it got there, so we didn't get past that very often, but I do remember him [sic] saying that many times.

Id.   Ms. Taylor recalled that she was aware of the mandatory minimum sentence of fifteen years and "was concerned about it." Id. at 11.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.  As noted by defense counsel at the evidentiary hearing, Petitioner had expressed his desire to proceed to trial because he continuously proclaimed his innocence.   Id. at 10, 48.   The trial transcript reflects that, even after the jury returned a verdict of guilty, Mr. Dormezil explained that he proceeded to trial because he "knew that [he] was not going to be found guilty . . . ."  Tr. at 287,

289.  This ineffectiveness claim is without merit.  <u>See</u> Response at 13-16.

### D. Ground Four

Petitioner claims that defense counsel was ineffective for failure to obtain an interpreter for Petitioner at the suppression hearing.  Petitioner raised this ground in his Rule 3.850 motion (as ground two), and the trial court, after conducting an evidentiary hearing, adjudicated the claim on the merits.  In denying the claim, the trial court stated in pertinent part:

> Claim Two is that trial counsel was ineffective for not providing the defendant with an interpreter or translator at a pretrial hearing to suppress evidence which violated defendants' [sic] due process rights. It is true that a failure to obtain an interpreter may constitute ineffective assistance of counsel. <u>Gonzalez v. Phillips</u>, 195 F.Supp.2d 893 (E.D. Mich. 2001). However, the premise for this holding is that the defendant needed an interpreter and did not understand English. That is not supported by the facts.  At the suppression hearing on November 24, 1997, the defendant testified (pages 32 through 42). The defendant, without an interpreter testified responsively and coherently.  Defendant's counsel Suzanne Taylor testified at the evidentiary hearing that she communicated with the defendant in English and she did not experience any problem.  Finally, during the course of the stop by Florida Highway Patrol[,] officer Michael Brown videotaped the encounter he had with the defendant and this video was introduced into evidence at the suppression hearing as Exhibit 1 (page 7 of the transcript).  This court has reviewed that videotape.

>           In that videotape, the defendant
>      communicated in understandable English to
>      Trooper Brown.  He understood requests made,
>      such as for a driver's license and
>      registration.  He understood questions in
>      English and responded in an appropriate
>      manner.  He gave substantive information that
>      he drove down from North Carolina to Miami to
>      sell his car.  He said a suitcase in the car
>      was his.  He said the car was rented by his
>      sister-in-law.  He also said he did restaurant
>      work.
>
>           In short, counsel was not ineffective in
>      failing to obtain an interpreter because the
>      defendant understood and communicated in
>      English and did not need one.

Ex. R at 165-66.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See Response at 16-18.

### E. Ground Five

Petitioner claims that his defense counsel was ineffective for failure to request a curative instruction or move for a mistrial regarding prosecutorial comments which addressed his post-arrest silence and which shifted the burden of proof. Petitioner raised these claims in his Rule 3.850 motion (as grounds seven and nine), and the trial court, after conducting an evidentiary hearing, adjudicated the claims on the merits. In denying the claims, the trial court stated in pertinent part:

> As to Claim Seven, the defendant asserts trial counsel was ineffective in not requesting a curative instruction or moving for a mistrial based on improper prosecutorial comment on the defendant's right to remain silent.[6] The failure to request a curative instruction is problematic because how do you demonstrate prejudice. Suppose that the jury that received a curative instruction -- would they have rendered a different verdict? As [sic] effective curative instruction would have eradicated the imputation and inference from the silence, that an innocent person would ask why he was being handcuffed. Stewart v. State, 221 So.2d 155 (Fla. 3rd DCA 1969). Movant can not demonstrate prejudice that there is a reasonable probability, that but for counsel not requesting a curative instruction, the result of the trial would be different. Strickland v. Washington, 466 U[.]S[.] 668 (1984). The whole idea of an effective curative instruction is that the improper comment would be eradicated and no influence would be drawn. The failure to move

---

[6] See Section VI.B., Ground Two (addressing Petitioner's claim that he was denied a fair trial when the trial judge did not declare a mistrial based on improper prosecutorial comments on his post-arrest silence); Tr. at 241 (prosecutor's comments).

29

for a mistrial requires the consideration by
this court as to whether a motion for mistrial
would have been granted. That will be
determined by consideration of whether this
comment on post arrest silence was harmless.

To demonstrate harmless error, it must be
shown that there is no reasonable possibility
that the error (comment) contributed to the
conviction and application of this test
requires examination of the permissible
evidence on which the jury could have
legitimately relied and on the impermissible
evidence which might have possibly influenced
the jury verdict. State v. DiGuilio, 491
So.2d 1129 (Fla. 1986). Let's review the
permissible evidence.

After the defendant's car was stopped by
Trooper Brown, the defendant consented to a
search. Trooper Traylor conducted that search
while Brown remained with the defendant. When
Trooper Traylor motioned with his flashlight
that the [sic] located contraband under the
back seat[,] the defendant attempted to take
off and run. The defendant had been intensely
watching the search by Trooper Traylor. This
attempted run was captured by the videotape.
These physical acts by the sole operator and
occupant of a vehicle containing 1035.8 grams
of cocaine was observed by the jury on
videotape. It completely predominates the
comment of why the defendant did not ask why
he was being handcuffed. The attempted
fleeing and the circumstances attendant
thereto, were already observed by the jury.
The Court concludes this comment on post
arrest silence did not contribute to the
conviction. The error is harmless[7] and a
motion for mistrial would not have been well
taken and the defendant has not shown
prejudice, in that there is no reasonable

---

[7] See Dormezil, 754 So.2d at 170 (concluding that counsel's
declining the trial court's implied offer to give a curative
instruction was not fundamental error); Section VI.B., Ground Two.

probability that the result of the proceeding
would have been different if a motion for
mistrial were made.

. . . .

Post conviction counsel[8] asserted that
the prosecutor incorrectly shifted the burden
of proof to the defendant as to why the
defendant did not call as a witness Frank, who
had briefly used the rental car containing the
cocaine.  That was improper argument.  <u>Jones
v. State</u>, 653 So.2d 1110 (Fla. 4th DCA 1995).
Post conviction counsel also asserted that the
prosecutor made an improper golden rule
argument by asking the jurors to place
themselves in the position of the defendant
concerning the lack of his fingerprints on the
cocaine packaging and the choice of where the
cocaine was placed in the car.

. . . .

The arguments were objectionable and that
would have been sustained, but the failure to
object was due to a trial strategy of Suzanne
Taylor not to object, unless the comments were
egregious.  That was her call in this trial.
Tactical or strategic decisions do not justify
post conviction relief.  <u>Gonzalez v. State</u>,
579 So.2d 145 (Fla. 3rd DCA 1991).  Strategy
decisions by counsel do not normally violate
the Sixth Amendment right to counsel.  <u>United
States v. Simmons</u>, 915 F.2d 1128 (7th 1990).
The decision to object and move for mistrial
based on the prosecutor's improper argument is
a complicated trial strategy decision in which
reasonably competent criminal defense lawyers
may differ and absent special circumstances
cannot be [in]effective assistance of counsel.
<u>Anderson v. State</u>, 467 So. 2d 781 (Fla. 3rd

---

[8] Petitioner's counsel filed an amended post conviction motion
to add a final claim.  Ex. R at 152-54.

> DCA 1985).[9]   There are no special
> circumstance here.   This case is not like the
> case of Gordon v. State, 469 So.2d 795 (Fla.
> 4th DCA 1985), wherein occurred 104 instances
> where defense counsel failed to object to
> improper question or improper comments by the
> prosecutor or the case of Ross v. State, 726
> So.2d 317 (Fla. 2nd DCA 1999), wherein the
> prosecutor improperly argued and repeatedly
> stressed the defense witnesses were
> "pathetic", "ridiculous", "inappropriate",
> "insulting to the jury's intelligence",
> "totally incredible", and flat out lied.
> [The] [p]rosecutor characterized Ross's
> testimony as "preposterous", "nonsense", and
> "bologna".

Ex. R at 168-69, 169-71.

As noted previously, upon Petitioner's appeal, the appellate
court per curiam affirmed the trial court's order.   Accordingly,
the claims were rejected on the merits by the state trial and
appellate courts.   Thus, this ground should be addressed applying
the deferential standard for federal court review of state court
adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law,
it is clear that Petitioner is not entitled to relief on the basis
of this ground because the state courts' adjudications of the
claims were not contrary to clearly established federal law, did
not involve an unreasonable application of clearly established
federal law, and were not based on an unreasonable determination of

---

9 Anderson v. State, 467 So. 2d 781, 787 (Fla. 3rd DCA 1985)
("Absent special circumstances, the failure to so object and move
for a mistrial cannot amount to ineffective assistance of
counsel.") (citation omitted).

the facts in light of the evidence presented in the state court proceedings.

The challenged prosecutorial comments regarding Petitioner's post-arrest silence were previously quoted in this Order.   See Section VI.B., Ground Two; Tr. at 241.   Further, the prosecutor stated:

> The Defendant looked down, tied his shoe, he was ready.  He put the items in his pocket. He was ready to flee.   And in fact, did attempt to flee, but he messed up.   He was caught, he was videotaped, and you're here today because of it, because of the evidence that's before you.  You may say, "Now, did he have knowledge that the drugs were in the car?"  Yes, he did.
>
> **Now, of course, we did hear about Frank. Frank was picked up.  Where is he?  I guess Frank could clear all this up for us today if he wanted to, but he hasn't.**  Why hasn't he? I submit to you because there's nothing to clear up.  The Defendant is the one who placed that cocaine underneath the seat.
>
>                 .  .  .  .
>
> What else?  We think that this mysterious Frank, with no last name, **Frank, is not here today**.  Did Frank just leave over a thousand grams of cocaine, such valuable property, in the back seat of a rental car?  No, not at all, because Frank wasn't there.

Id. at 249-50 (emphasis added).

Even assuming *arguendo* that the prosecutor's comments were improper, the comments, when considered in the context of the entire proceeding, did not in any way render the proceeding fundamentally unfair.  There is no reasonable probability that the

comments changed the outcome of the case.  <u>Cargill v. Turpin</u>, 120 F.3d at 1379; <u>Sexton v. Howard</u>, 55 F.3d at 1559.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  During the evidentiary hearing, defense counsel stated:

> I try generally not to do a lot of objecting unless I think it's something that's pretty outrageous, just in general, not necessarily in closings.  I'm not the type of attorney who objects all the time.

EH Tr. at 24.  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.  Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.

The trial judge instructed the jury that the attorneys were not witnesses in the case and therefore their statements and arguments were not evidence.  Tr. at 12, 215; <u>see</u> <u>Brown v. Jones</u>, 255 F.3d at 1280 (stating that "jurors are presumed to follow the court's instructions.").  Further, defense counsel reminded the jury that what the attorneys say is not evidence.  Tr. at 216.  Additionally, the jury was instructed that Petitioner Dormezil has a right to remain silent; that the State must prove the elements of

the charge beyond a reasonable doubt; and that "[a]t no time is it the duty of a defendant to prove his innocence." <u>Id</u>. at 11, 14, 267-68, 269-70.

The prosecutor, during closing argument, reminded the jury that the State has the burden of proof:  "I have to prove this case, the elements of this charge, the elements that I read to you, beyond a reasonable doubt." <u>Id</u>. at 256.  Finally, in responding to the State's closing argument, defense counsel addressed the State's reference to Frank.

> Now the one fingerprint that we don't know who's it is, except that it's not Mr. Dormezil's, I think that fingerprint alone, that alone, is a reason for you to conclude that this Frank, this friend, Frank, is not a figment of Mr. Dormezil's imagination, which is what the State would lead you to believe. What the State argues is that Frank does not exist, that this is completely a made up story.

> Well even if Mr. Dormezil had touched the cocaine and wiped off his prints as the State has just argued, who touched it?  Somebody did.  It wasn't the officer, but somebody did. It was Frank.  Who else could it have been? It was somebody.  And if it's somebody -- Mr. Dormezil says it's Frank.  You have no reason to believe it's not Frank.  There's no reason not to believe that.  Somebody touched it other than -- if Mr. Dormezil touched it and wiped his prints off as the State said, somebody had touched it because the State has a fingerprint and it's not Mr. Dormezil's.

<u>Id</u>. at 263.  Immediately thereafter, defense counsel again stressed that it is the State's burden to prove their case beyond a reasonable doubt:  "That's what the State's burden always is in a

criminal case.  It's critical.  It's critical."  Id. at 264.  Thus, as noted by the Respondents, the ineffectiveness claim is without merit.  See Response at 18-19; Section VI.B., Ground Two.

### VII. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this ___3rd___ day of May, 2006.

*Howell W. Melton*
HOWELL W. MELTON
United States District Judge

sc 4/26
c:
Jean E. Dormezil
Ass't Attorney General (McGuigan)

36